UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SUBPOENA TO KAISER FOUNDATION HEALTH PLAN INC., | Case No.  25-mc-80379-LJC |
| | **ORDER GRANTING IN PART MOTION TO COMPEL** |
| | Re: Dkt. No. 1 |

## I.      INTRODUCTION

Movant Jane Doe (Doe) seeks an order compelling Respondent Kaiser Foundation Health Plan Inc. (Kaiser) to comply with a document subpoena served on August 7, 2025.  ECF No. 1 at 2.  Kaiser has refused to produce documents in response to six requests for production of documents regarding the purported unauthorized transmission of personal health data on Kaiser's websites.  This matter is suitable for decision without oral argument.  Civil L.R. 7-1(b).  Having considered the parties' arguments, the relevant legal authority, and the record in this case, the undersigned rules as follows: (1) the time period for discovery is limited to February 1, 2020 to the present for documents regarding Qualtrics and to August 1, 2021 to October 20, 2023 for documents regarding Microsoft; (2) Kaiser shall respond to RFP Nos. 5-6; (3) RFP Nos. 7-8 shall be limited to documents sufficient to show Qualrics' and Microsoft's respective software's ability to identify users of the Kaiser Websites, and Kaiser shall respond to these RFPs as modified; (4) Kaiser does not need to respond to RFP Nos. 11-12.

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    The Underlying Action

Doe brought a putative class action against Qualtrics International Inc. and Qualtrics LLC (Qualtrics) and Microsoft Corporation (Microsoft) (collectively, Defendants) in the Western District of Washington for allegedly using software on Kaiser's website at https://healthy.kaiserpermanente.org/ (the Kaiser Website) to intercept patient data. *See Doe v. Microsoft Corp.*, 23-cv-718, ECF No. 75 (W.D. Wash. Feb. 13, 2024) (Underlying FAC).[1]  Doe alleges that she is a Kaiser member and uses the Kaiser Website to access her medical records and make appointments.  *See* Underlying FAC ¶ 7.  She alleges that code on the Kaiser Website includes software development kits (SDKs) from Microsoft and Qualtrics that intercept and collect personal medical information from Kaiser members, such as herself, who use the Kaiser Website. *See id.* ¶¶ 29, 31-87.  Kaiser is not a party to the Underlying Action.

There is a separate class action proceeding against Kaiser in the Northern District of California, *Doe v. Kaiser Foundation Health Plan*, 23-cv-02865 (the *Kaiser* Action), seeking to hold Kaiser liable for the alleged interception of member data on the Kaiser Website.  In May 2024, Kaiser released a notice informing members that online technology installed on its websites "may have transmitted personal information" to Kaiser's third-party vendors.  ECF No. 1-2 at 563 (the Data Breach Notice).  A $46 million settlement was preliminarily approved in the *Kaiser* Action in December 2025.  *See Doe v. Kaiser,* 23-cv-02865, ECF No. 393 (N.D. Cal. Dec. 5, 2025).

### B.    Doe's Subpoena to Kaiser

In the pending Motion to Compel, Doe contends that Kaiser has documents relevant to the Underlying Action.  ECF No. 1 at 11.  She argues that the existence of the "*Kaiser* Action and the Data Breach Notice leave no doubt that Kaiser possesses internal documentation of the data breach incident at issue" in the Underlying Action, and that she is "entitled to explore whether Kaiser possesses … documents or communications discussing the categories of Kaiser Member data that

---

[1] Throughout this Order, the Court refers to Doe's lawsuit against Qualtrics and Microsoft as the "Underlying Action."

United States District Court
Northern District of California

Microsoft and/or Qualtrics" had access to, as well as Kaiser's concerns about the privacy implications of Microsoft's and Qualtrics' software. *Id.* To obtain documents from Kaiser, Doe served Kaiser with a subpoena pursuant to Federal Rule of Civil Procedure 45, requesting twelve categories of documents. *See* ECF No. 1-2 at 348 (Kaiser Subpoena). Kaiser objected to the subpoena and has refused to produce documents in response to Requests 5-6, 7-8, and 11-12.[2] *See id.* at 412-23 (Kaiser's Supplemental Objections and Responses). The requests at issue are:

> Request Nos. 5-6: DOCUMENTS and COMMUNICATIONS, whether internal or between YOU and any non-party to this ACTION, sufficient to identify the KAISER MEMBER DATA, including the types, categories, and/or FIELDS of DATA, obtained by MICROSOFT[/QUALTRICS] as a result of its products, services, SDKs, and/or computer code incorporated, included, and/or used in, on, or by the KAISER WEBSITES at any time between January 1, 2014 and the present

> Request Nos. 7-8: ALL DOCUMENTS and COMMUNICATIONS, whether internal or between YOU and any non-party to this ACTION, RELATING TO MICROSOFT's[/QUALTRICS'] ability to identify users of the KAISER WEBSITES using user DATA, including, but not limited to, PRIVATE DATA and/or USER-AGENT DATA, that MICROSOFT[/QUALTRICS] collects through its products, services, SDKs, and/or computer code incorporated, included, and/or used in, on, or by the KAISER WEBSITES at any time between January 1, 2014 and the present.

> Request Nos. 11-12: ALL DOCUMENTS and COMMUNICATIONS, whether internal or between YOU and any non-party to this ACTION, RELATING TO concerns raised by YOU about whether the MICROSOFT[/QUALTRICS] products, services, SDKs, and/or computer code incorporated, included, and/or used in, on, or by the KAISER WEBSITES at any time between January 1, 2014 and the present infringe on the privacy of users of the KAISER WEBSITES.

*Id.* at 358-60 (the Requests). Doe argues that these requests seek relevant information and that requiring Kaiser to produce responsive documents is proportionate to the needs of the case. ECF No. 1 at 17-23. Kaiser disagrees, arguing that documents regarding Kaiser's opinions about Defendants' software are not relevant and that production is disproportionate to the needs of the case, particularly given that Kaiser is not a party to the Underlying Action and that Defendants

---

[2] Each paired request is identical to each other (that is, Requests 5-6 are identical to each other, Requests 7-8 are identical to each other, and Requests 11-12 are identical to each other), except that Requests 5, 7, and 11 ask about Microsoft's software and Requests 6, 8, and 12 ask about Qualtrics' software. ECF No. 1-2 at 358.

have already produced discovery regarding the alleged data collection.  ECF No. 7 at 15-18.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 45(a)(1)(D) authorizes parties to serve a "subpoena to produce documents, electronically stored information, or tangible things" on a nonparty.  The responding person must then "permit inspection, copying, testing, or sampling of the materials." *Id.*  "The scope of discovery under Rule 45 is the same as under Rule 26(b)."  *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939, 2017 WL 3581171, at *1 (N.D. Cal. Aug. 18, 2017) (citing Fed. R. Civ. P. 45 Advisory Comm.'s Notes (1970)).  Rule 26(b) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The recipient of the subpoena may object "before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B).  If an objection is made, "the serving party may move the court … for an order compelling production or inspection."  *Id.*  "[T]he order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  *Id.*  "On timely motion, the court for the district where compliance is required must quash or modify a subpoena" that, among other things, "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).  Additionally, the "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  "Determining whether a subpoena is unduly burdensome requires the court to consider such factors as relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by it, the particularly with which the documents are described and the burden imposed."  *Sabre GLBL, Inc. v. Kimpton Hotel & Rest. Grp., LLC*, No. 21-mc-80053, 2021 WL 1839689, at *3 (N.D. Cal. May 6, 2021) (internal quotations omitted).  Relevancy for discovery purposes is broad, and courts "whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment

United States District Court
Northern District of California

4

on what constitutes relevant evidence thereunder.  Where relevance is in doubt ... the court should be permissive." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006) (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987)).

"[I]n general the party seeking to compel discovery bears the burden of showing that [their] request" seeks relevant information.  *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  "In turn, the party opposing discovery has the burden of showing that discovery should not be allowed." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).

## IV.     ANALYSIS

### A.     Relevance

Doe argues that the requests at issue seek relevant information.  *See* ECF No. 1 at 17-19. The Court agrees.  In the Underlying Action, Doe alleges that Microsoft and Qualtrics violated California privacy and unfair competition laws and were unjustly enriched due to their alleged interception of user data from the Kaiser Website.  Underlying FAC ¶¶ 127-98.  Microsoft and Qualtrics deny these claims.  *Doe v. Microsoft*, 23-cv-718, ECF Nos. 78 (Microsoft's Answer), 79 (Qualtrics' Answer) (N.D. Cal. Mar. 5, 2024).  As asserted in their Answers to the Underlying FAC, Microsoft and Qualtrics claim (among other things) that they are not liable because any harm Doe may have suffered was due to Kaiser's conduct and that Doe and other Kaiser members consented to the alleged data collection.  *See* Microsoft's Answer at 74-75 ("To the extent that Plaintiff and the putative class suffered any damages, such resulted … from their own conduct and/or the conduct of third parties—namely, Kaiser. … Plaintiff and/or putative class members voluntarily consented … to the collection of such information … ."), Qualtrics' Answer at 14 ("Plaintiff's claims are barred, in whole or in part, because she consented to the alleged activity in her agreements with Kaiser … Qualtrics has no liability to Plaintiff because the alleged harm, if any, was attributable to … third parties, including Kaiser," and "Kaiser, not Qualtrics, would be required to inform individuals of Kaiser's use of the Qualtrics serves and the processing of that individual's data by Qualtrics").

Requests 5-8 seek documents regarding the types of information Defendants were able to

United States District Court
Northern District of California

obtain from users of the Kaiser Website, including whether Defendants were able to identify individual Kaiser members from this information. This material bears on Doe's claim that Defendants unlawfully collected their personal and medical information, as well as Defendants' arguments that Kaiser obtained consent from its members, and is thus squarely relevant. Requests 11-12 seek internal and third-party documents and communications regarding Kaiser's concerns, if any, about whether Microsoft and Qualtrics' tracking software infringed on Kaiser members' privacy. Kaiser argues that its "*opinions* about Defendants' behavior" are "not evidence" showing whether Defendants actually intercepted, collected, stored, and used Kaiser's member data. ECF No. 7 at 15. To Kaiser's point, its opinions about Defendants' behavior will likely not be directly probative of Defendants' liability. But relevance at this stage is broad, and discovery into Kaiser's concerns about Defendants' software may reveal Kaiser's knowledge of the alleged data collection, which in turn would bear on Defendants' arguments regarding consent and Kaiser's responsibility. *See Gonzalez*, 234 F.R.D. at 678-81. The undersigned accordingly concludes that the Requests at issue in Doe's Motion to Compel seek relevant information.

### B.     Proportionality

The heart of this dispute is about proportionality. Kaiser argues that the requests at issue "go far beyond what is acceptable third-party discovery" and are disproportionate to the needs of the case, particularly given that much of the information Doe seeks from Kaiser has already been provided by Defendants. ECF No. 7 at 12. Doe disagrees, arguing that the discovery is proportional given the importance of the issues in the Underlying Action and parties' access to information, and that the documents it seeks are uniquely in Kaiser's possession and thus not duplicative of discovery it has obtained (or should have obtained) from Defendants. *See* ECF No. 8 at 12-15.

#### 1.     Requests 5-8

As noted above, Requests 5-6 ask for documents sufficient to identify the types of data Microsoft and Qualtrics collected from users of the Kaiser Website. ECF No. 1-2 at 358. Requests 7-8 ask for all documents regarding Microsoft's and Qualtrics' ability to identify users from the data they obtained. *Id.* As Kaiser explains, in the Underlying Action Microsoft and

6

Qualtrics produced discovery identifying the fields of data they obtained from the Kaiser websites. ECF No. 7 at 14; *see* ECF No. 1-2 at 212, 218-20 (Microsoft's responses to Doe's RFPs, agreeing to produce documents sufficient to identify fields of data collected through Microsoft's SDK), 269, 277-80 (Qualtrics' response to Doe's RFPs, agreeing, among other things, to "produce non-privileged responsive documents sufficient to identify all fields of data included in Qualtrics' general collection of user-agent data through or because of Qualtrics' website feedback/survey tool"). Microsoft and Qualtrics have likewise produced discovery affirming that were not able to identify individual users of the Kaiser Website. *See* ECF No. 1-2 at 237, 298-99.

Kaiser argues that as Doe has "already obtained" information responsive to Requests 5-8 served on Kaiser from Defendants, production from Kaiser is duplicative and unnecessary. ECF No. 7 at 14. Doe counters that Requests 5-8 only seek documents "internal to Kaiser or between Kaiser and any *non-party*" and are thus not duplicative to the party discovery obtained from Defendants. ECF No. 8 at 14. Both sides' arguments are well taken. On the one hand, as Kaiser argues, it may be improper for parties to demand production of documents from "nonparties when the documents sought are in possession of the party defendant." *In re Subpoena to Apple Inc.*, 24-cv-80139, 2014 WL 2798863 (N.D. Cal. June 19, 2014) (quoting *Nidec Corp. v. Victor Co. of Japan,* 249 F.R.D. 575, 577 (N.D. Cal. 2007)). On the other, unlike in *Apple*, Doe is not seeking documents she could have obtained from Defendants, but rather documents uniquely in Kaiser and other nonparty's possession. *See* ECF No. 8 at 14. Turning back to Kaiser's argument, though Doe is not seeking the exact same documents that she obtained (or could have obtained) from Defendants, the information she wants from Kaiser overlaps with the information she has already obtained from Defendants. This lessens Doe's need to obtain the information from Kaiser, but, for the following reasons, does not warrant denying Doe's request that Kaiser respond to Requests 5-8 outright. *See* Fed. R. Civ. P. 26(b).

First, obtaining documents from Kaiser would permit Doe to verify the accuracy of Defendants' discovery responses. Permitting third-party discovery as a means of cross-checking a party's production is not always warranted, *see LegalZoom.com v. RocketLaw*, No. 12-cv-00942, 2015 WL 12832823, at *2 (N.D. Cal. Mar. 12, 2015), but such discovery may be proportionate to

United States District Court
Northern District of California

the needs of the case if the discovery requests to the third party are not otherwise unreasonably burdensome. *See Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200, 2017 WL 3124014, at *5 (N.D. Cal. July 24, 2017) (permitting third party subpoenas to corroborate testimony provided by plaintiffs).

Second, and more importantly to the Court's analysis, Doe is entitled to discovery regarding Kaiser's knowledge of Defendants' software's tracking capabilities. In the Underlying Action, Defendants argue that they are not liable because, among other reasons, Kaiser obtained Doe's consent to track her user data and because Kaiser, not Defendants, is responsible for any harm Doe may have experienced. *See* Microsoft's Answer at 74-75; Qualtrics' Answer at 14. Kaiser's understanding of what types of data Defendants' software tracked and whether Defendants were able to identify individual patients will likely bear on these defenses, and discovery evidencing Kaiser's *knowledge* of the software's capabilities—in addition to discovery evidencing the software's capabilities—is warranted. Production of Kaiser's internal documents and communications with other non-parties, which will likely reveal Kaiser's knowledge of Defendants' software's capabilities, is thus proportional to the needs of the case.

Third, Requests 5-8 can be modified to lessen the burden on Kaiser. *See* Fed. R. Civ. P. 45(d)(3)(iv) (requiring courts to quash or modify subpoenas that subject the respondent to an undue burden). Doe and Kaiser apparently met and conferred about limiting the relevant timeframe for discovery. *See* ECF No. 1-2 at 427-32. Kaiser's counsel's proposal to limit the discovery timeframe to when Kaiser implemented Defendants' respective technologies is reasonable. *See id.* at 428. With slight modifications to Kaiser's counsel's proposal, the Court orders the following: as to Requests 5 and 7 (regarding Microsoft's software), the timeframe for discovery shall be September 7, 2021 to October 20, 2023. As to Requests 6 and 8 (regarding Qualtrics' software), the timeframe for discovery shall be March 21, 2020, to August 7, 2025.

Requests 5-6 seek documents and communications "sufficient to identify" the Kaiser member data obtained by Microsoft and Qualtrics' software. ECF No. 1-2 at 377-78. These requests do not require Kaiser to produce all documents related to the data Defendants collected, but rather ask for a targeted production of documents sufficient to show the types, categories, or

8

fields of data Defendants collected.  With the temporal limits ordered above in place, the Court determines that Requests 5-6 are not unduly burdensome and are proportional to the needs of the case.

In contrast, Requests 7-8 seek *all* documents and communications relating to Defendants' ability to identify users of the Kaiser Website.  *Id.* at 279-80.  Production of all documents related to this topic is overbroad, given that the primary purpose of these requests is to require Kaiser to confirm or deny whether Defendants were able to identify users from the data they collected.  Limiting these Requests to documents "sufficient to show" is thus warranted.  *See* Fed. R. Civ. P. 45(d)(3)(iv); *Champion v. Feld Ent., Inc.*, No. 20-cv-2400, 2022 WL 1813608, at *5 (S.D. Cal. June 2, 2022).  Requests 7-8 are modified as follows:

> DOCUMENTS and COMMUNICATIONS, whether internal or between YOU and any non-party to this ACTION, sufficient to show [MICROSOFT's/QUALTRICS'] ability to identify users of the KAISER WEBSITES using user DATA, including, but not limited to, PRIVATE DATA and/or USER-AGENT DATA, that [MICROSOFT/QUALTRICS] collects through its products, services, SDKs, and/or computer code incorporated, included, and/or used in, on, or by the KAISER WEBSITES.

Kaiser shall produce documents responsive to Requests 5-8, as modified by this Order, by February 27, 2026.

### 2.   Requests 11-12

Requests 11-12 ask for documents relating to "concerns" raised by Kaiser about whether Defendants' software infringed "on the privacy of users of the" Kaiser Website.  ECF No. 1-2 at 384.  Documents evidencing Kaiser's opinions about Defendants' software are likely uniquely in Kaiser's possession, and the Court is not concerned that this request seeks information that Doe has or should have sought from Defendants.  However, these Requests are overbroad and likely seek a significant amount of privileged material.  Doe has not clarified what she means by "concerns" or "privacy," or what constitutes "raising" a concern, and the Requests as written conceivably ask Kaiser to produce all communications and documents, whether formal or informal, between employees or third parties regarding website users' privacy.  Requiring Kaiser to search for and review such a capacious category of documents is unduly burdensome.  Given

the limited relevance of these documents, discussed above, the Court denies Doe's request that Kaiser produce documents in response to Requests 11-12. *See* Fed. R. Civ. P. 45(d)(3)(A); *Gonzales*, 234 F.R.D. at 680 ("[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").

## V.    REQUEST FOR COST-SHIFTING

Kaiser requests cost shifting pursuant to Rule 45(d)(1). ECF No. 7 at 19. "Rule 45(d)(1) is discretionary," and courts "need not impose sanctions every time it finds a subpoena overbroad." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). Although the undersigned found portions of the subpoena overbroad, the subpoena was not "so facially overbroad" as to warrant cost-shifting under Rule 45(d)(1). *Id.* Even if the Court construes Kaiser's requests for cost-shifting as a request pursuant to Rule 45(d)(2)(B)(ii), cost-shifting is only mandatory if the subpoena "imposes significant expense on the non-party." *Id.* at 1184. "[N]either the Federal Rules nor the Ninth Circuit has defined 'significant expenses,'" and courts "consider the ability of the producing non-party to bear the costs of production" and whether the nonparty "has an interest in the outcome of the case." *United States v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014); *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188, 2015 WL 4747260, at *5 (N.D. Cal. Aug. 11, 2015). Considering these factors, the Court concludes that responding to Doe's subpoena in compliance with this order will not impose a "significant expense" on Kaiser. *Legal Voice*, 738 F.3d at 1184. Kaiser's request for cost-shifting is DENIED.

## VI.    CONCLUSION

For the forgoing reasons, Doe's Motion to Compel is DENIED in part and GRANTED in part. Doe's request that Kaiser respond further to Requests 11-12 is DENIED. Doe's request that Kaiser respond further to Requests 5-8 is GRANTED subject to the following limitations: the timeframe for responses to Requests 5 and 7 (regarding Microsoft's software) shall be September 7, 2021 to October 20, 2023. The timeframe for responses to Requests 6 and 8 (regarding Qualtrics' software) shall be March 21, 2020, to August 7, 2025. Kaiser's production in response

10

to Requests 7-8 need only include documents and communications sufficient to show Defendants' respective abilities to identify users of the Kaiser Website using data collected by Defendants' software.  Kaiser shall provide amended responses to Requests 5-8 by February 27, 2026.

Kaiser's request for cost-shifting is DENIED.

**IT IS SO ORDERED.**

Dated: February 11, 2026

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

11